[Civ. No. 32632.   Second Dist., Div. Two.   Aug. 28, 1968.]

ROBERT R. MANN, Petitioner, v. WORKMEN'S COMPEN-
SATION APPEALS BOARD, 20TH CENTURY FOX
FILM CORPORATION et al., Respondents.

Stuhr & Martin, Charles Stuhr and W. B. Benes for Peti-
tioner.

Everett A. Corten, Edward A. Sarkisian, Sheldon M. Ziff,
McLaughlin, Evans, Dalbey & Cumming and Wm. Blair Dal-
bey for Respondents.

McCOY, J. pro tem.*—This is a proceeding in which the applicant for workmen's compensation benefits seeks annulment of the award made by the Workmen's Compensation Appeals Board.

On October 11, 1965, applicant, a 27-year-old grip, employed by the 20th Century Fox Films, sustained an admitted industrial injury when he fell approximately 20 feet from a rolling camera mount. It was established that he had sustained spinal and pelvic fractures. For a time he was paralyzed below the waist. A laminectomy was performed with decompression of nerve roots and spinal fusion.

After a number of hearings the referee found that the applicant's injury caused permanent disability of 62 percent equivalent to 248 weeks at $52.50 a week, and made his award accordingly. When the applicant petitioned for reconsideration, the referee recommended that the petition for reconsideration be granted "for limited purposes of adding additional factors of permanent disability to the recommended rating issued in this matter" by the rating specialists. Notwithstanding this recommendation, the board denied reconsideration.

Applicant's petition for reconsideration was based on his contentions that (1) the record contains factors of permanent disability which were not included in the request for a recommended rating which form the basis for the award made by the referee, and (2) that he is entitled as a matter of law to a 100 percent permanent disability rating based on all relevant factors. He makes the same contentions here. In our opinion, the petition for reconsideration should have been granted for the limited purpose recommended by the referee.[1]

The first hearing on the application was on March 21, 1967.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]More specifically, applicant contends here, as he did in his petition for reconsideration (1) that the rating instructions completely ignored the medical evidence submitted by both parties which established without dispute that applicant has a serious bowel disfunction and minimizes urinary problems resulting from the industrial injury; and (2) that he is entitled as a matter of law to 100 percent permanent disability rating based upon the factor of incontinence of feces and urine which is rated at 100 percent in the schedule for rating permanent disabilities adopted by the board under the authority of section 4660 of the Labor Code. The referee recommended that reconsideration be granted for the limited purpose of adding additional factors of permanent disability as follows: "Loss of sensation of the rectum, anal canal and perianal skin due to trauma to the back; occasional anal ulcers and hemorrhoids, hypertrophied and papilla secondary to his trauma; occasional necessity for applicant to remove hard stool from rectum with his fingers; limitation to employment where he

At that hearing applicant testified, so far as relevant here, as summarized by the referee, that "He has a lack of sensation in the penis, scrotum, and rectal area. He cannot control urination or defecation. Upon lifting 35 pounds or more he has an involuntary defecation. He must go to the bathroom at least once every one to one-and-a-half hours. He cannot last longer than two hours without going to the bathroom. When he goes to the bathroom he does not know whether he will urinate or defecate. He just presses down. When he has a hard stool he must remove it from his rectum with his fingers. This has caused hemorrhoids or ulcers in the rectal area for which he has been treated." At the same time the referee received in evidence for applicant reports by Dr. Norman Hoffman, a proctologist, and Dr. Seymour Rosenwasser, a urologist. The reports received on behalf of defendants included those of Dr. Sanford Kornblum, an orthopaedic surgeon, Dr. Phillip Davis, a urologist, and Dr. Irwin Markowitz, an orthopaedic physician and surgeon, together with several reports relating to the injury to and operation on applicant's spine.

The referee's minutes of the hearing of March 21, 1967, show the following disposition: "Thirty days are allowed for defendants to file a proctological medical report and a urological medical report, with seven days allowed for rebuttal. Further disposition, if any, is to be made thereafter. The case otherwise stands submitted." Pursuant to leave thus granted, several other doctors' reports were filed both by applicant and defendants.

Within a few weeks after the hearing in March, but before all of the later medical reports had been received, the referee requested a permanent disability rating specialist for a rating of the applicant's permanent disabilities, listing his occupation as "grip-stage construction," and based on the following: "As a result of industrial injury to back and urinary problems, applicant is precluded from heavy work or any work involving work aloft. He is limited to employment where he has access to a bathroom every two hours because of urinary difficulties." It is significant to note that this request for a rating made no reference to applicant's defecation difficulties, although there was medical evidence before the referee

has access to a bathroom every two hours because of urinary and fecal discharge difficulties; as a result of industrial injury to the back and urinary and fecal discharge problems, applicant is precluded from heavy work or any work involving work aloft (the latter portions of the instructions were included in the recommended rating issued in this matter)."

at the time that applicant was having such difficulties, secondary to the industrial injury to the spine. On April 20, G. R. Simon, the rating specialist, recommended a rating of 65 percent which was modified later for applicant's occupation as "grip" and corrected to read 62 percent permanent disability. On receipt of this rating all parties requested a hearing for the purpose of cross-examining the rating specialist and the presentation of rebuttal evidence.

A further hearing was held on September 21. The point at issue at this hearing was whether the rating specialist properly applied the provisions of paragraph 18 of the rating schedule. Disability number 18.1 gives standard ratings for "Impaired Function of the Neck, Spine, or Pelvis" as "Slight—30%, Moderate—50%, Severe—100%." A footnote to this number reads: "The rating may be increased or decreased from the scheduled rating where the degree of disability so warrants." Disability number 18.3 gives standard ratings for "Spinal Cord Injuries Causing Paralysis," including "18.32, Incontinence of Feces and Urine—100%." There is no asterisk following number 18.3 or number 18.32 indicating that the rating thereunder may be increased or decreased, as is the case with respect to number 18.1.

The rating of 65 percent recommended by the specialist shows that it is based on paragraph 18.3 of the schedule.[2] At the hearing on September 21, the specialist testified in part, as summarized by the referee: "The rating in this matter is 18.3, which pertains to the spinal cord injuries causing paralysis, and involves those cases of paralysis of both lower extremities, and/or incontinence of feces and urine. The disability 18.1 has an asterisk indicating the rating may be increased or decreased from the scheduled rating for the degree of disability so warranted. That he has applied this to the disability number 18.3. In his opinion the fact that the applicant can control himself for a period of one and a half hours would indicate there is no total incontinence, and accordingly, would entitle him to a portion of the total incontinence which is a standard rating of 100%. He is aware of the fact that the disability number 18.3 does not have an asterisk next to it, but he does not believe it should be handled any differently than the 18.1 disability number, which allows modification of the rating depending upon the degree of disability. He believe [*sic*] there

---

[2]This rating is not included in the return of the board to our writ of review. However, a photocopy has been incorporated as exhibit D to the petition for review.

would be a pyramiding of disability if he were to rate for incontinence and limitation to no heavy lifting. The present rating reflects the fact that upon lifting 35 pounds or more the applicant involuntarily defecates. Accordingly, the limitation to no heavy lifting has been placed upon him, and this is contained in the rating. The factual situation as read to him indicates that the only time the applicant involuntary defecates is upon lifting 35 pounds or more. The rest of the time he can control himself for at least an hour and a half to two hours. That the rating of no heavy lifting would accordingly allow him to be rated for disability which would preclude involuntary defecation, and for the remainder of the time he can restrict his necessity to go to the bathroom, and for this reason he believes there is no total incontinence, but only a partial incontinence, for which the applicant has been rated.'' He also testified ''That he is still of the opinion that the disability number 18.3, consisting of incontinence, can be partial or total. That in the present matter he believes the incontinence is partial and does not take a standard rating of 100%.''

The referee found that applicant's injury caused permanent disability of 62 percent and made his award accordingly. In his opinion on the decision the referee stated with respect to applicant's permanent disability: ''I rely on the testimony of the applicant, testimony of Mr. Simon, Permanent Disability Rating Specialist, medical reports on file which indicate applicant sustained permanent disability of 62 per cent.''

Applicant petitioned for reconsideration on the stated grounds that the evidence does not support the findings of fact, that by the decision of the referee the board exceeded its powers, and that the findings of fact do not support the award. In his petition he refers to the reports of the several doctors which show without contradiction that applicant suffered a urinary disfunction and a bowel disfunction secondary to the injury to his back. He also contends that the referee's request for a rating minimized applicant's urinary difficulties and made no reference whatever to his bowel disfunction. He further challenges the power of the rating specialist to reduce the standard rating set by schedule number 18.32.

As noted above, the referee recommended that the petition for reconsideration ''be granted for limited purposes of adding additional factors of permanent disability to the recommended rating issued in this matter.'' In his report on the

petition the referee stated that the petitioner ''does in fact, indicate certain permanent factors of disability which may, if considered by the Rating Bureau, change the rating issued in this matter.'' He then recites the factors relating to applicant's bowel disfunction as well as those previously included in the request for a rating and says: ''We believe in fairness to the applicant, that the Permanent Disability Rating Bureau should have an opportunity to indicate whether the total picture as heretofore set forth would change the permanent disability rating in this matter.'' The referee concluded his opinion with the statement that he believed ''based upon a reasonable interpretation of the *Schedule For Rating Permanent Disability* and the factual situation in this matter, that a 100 per cent rating for incontinence of feces and urine is not proper under the circumstances.''

The board denied the petition for reconsideration. In doing so it held ''that the factor of permanent disability included by the referee [in his request for a rating] were correct and warranted a rating of 62%.'' The board further held ''that a 100%permanent disability rating for total incontinence of both feces and urine, which is not sustained by the record, would be improper.'' In reaching this conclusion the board said that it had reviewed the record, including the testimony of the applicant and of the rating specialist, and the medical reports of Dr. Davis of April 14, and March 27, 1967, and of Dr. Rosenfeld dated May 19, 1966. ''Dr. Davis in making a urological evaluation of applicant on April 14, 1967 noted that at the time of applicant's discharge from the hospital on December 10. 1965 that he was able to empty his bladder completely. Dr. Davis further reported that applicant had suffered injury only to S-3 sacral nerve which causes applicant no urological disability or at the most extremely minimal disability since it does not constitute any interference with his normal work. Dr. Rosenfeld in his May 19, 1966 report stated that applicant could perform light work. Mr. Simon the rating specialist testified that in his opinion the fact that applicant could control himself for a period of one to one and a half hours would indicate there is no total incontinence. Accordingly, he believes the incontinence in this case is partial and does not take the standard rating of 100%. He also stated that based upon the degree of incontinence and the work limitation he believes the standard rating in this matter is correct. He felt that based on the record and applicant's occupation, the rating should be lower and modified to 62%.''

In effect, the board thus decided that applicant suffered no permanent disability attributable to incontinence of either bladder or feces, and that the factors relating to incontinence of feces need not be considered in making the rating. As we read it, the record does not sustain this decision.

It is true that on April 14, 1967, Dr. Davis reported that, as of that date, it was his "impression that this patient has no significant, demonstrable genitourinary disease at this time," that he "requires no further urological treatment," and that he "requires no disability related to his genitourinary system." The board, however, did not vacate the award which is based on the referee's finding that applicant did sustain permanent disability of 62 percent caused, in part, by incontinence of the bladder. Dr. Davis expressed no opinion as to applicant's other difficulties.

The question then is whether, in rating applicant's permanent disability, the referee and the rating expert should have considered the factors relating to applicant's concurrent incontinence of feces, as recommended by the referee in response to the petition for reconsideration. The board held that these factors need not be considered. In doing so it apparently relied on the report of Dr. Rosenfeld of May 19, 1966, in which he stated that applicant could perform light work. "We do not question the power of the W.C.A.B. to choose among conflicting medical reports those which it deems most persuasive." (*Jones* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 476, 479 [67 Cal.Rptr. 544, 439 P.2d 648].) Having done so, however, the board must, in all fairness to the applicant, give full weight to the findings of the doctor whose report it relies on. In his report of May 19, 1966, in which he recommended applicant be considered for final rating, Dr. Rosenfeld, an orthopaedic surgeon, said unequivocally: "This patient's condition appears permanent and stationary and has been for several months. His permanent residual disabilities are: 1. Saddle anesthesia of rectum and buttocks area. 2. Loss of rectum power and tone. 3. Neurogenic bladder." Dr. Rosenfeld's observation that applicant "could be employed at the studios doing light prop work or special effects, but no grip work," affirms rather than negates his finding that applicant suffered permanent residual disabilities as set forth in his report.

So far as the rating expert is concerned, we find nothing in his testimony to support the view that the inclusion in the

request for a rating of the factors relating to applicant's bowel disfunction would have made no difference in the rating recommended by the expert.

As a general rule "The determination of the . . . disability is, of course, left to the sound discretion of the Commission to be exercised in view of all the circumstances." (*Hines* v. *Industrial Acc. Com.*, 215 Cal. 177, 188 [8 P.2d 1021].) In *Hines* the court held (p. 188) "that that portion of the finding of the Commission that 'the evidence does not establish that . . . the disability with relation to the genitourinary organs was proximately caused by said injury' is erroneous for the reason that the uncontradicted medical evidence in the record establishes the fact that the loss of control of the urinary function is a result of the injury to the spine, which injury, it is conceded, was proximately caused by the accident. As this disability was not included in the permanent disability rating, the award to that extent is not sufficient." In the case before us, while applicant's "urinary difficulties" as a result of the injury to applicant's spine were included in the permanent disability rating, the factors relating to applicant's bowel disfunction, also the result of the injury to the spine, were not included.

From our analysis of the record we are satisfied that the decision denying reconsideration must be annulled. We do not say, as contended by applicant, that his permanent disability should be rated at 100 percent. We do say, however, that to the extent that the factors relating to applicant's bowel disfunction were not included in the request for a rating of his permanent disabliity, the award based on a rating of 62 percent is not enough.

The decision denying the petition for reconsideration is annulled, and the matter is remanded to the board with instructions to grant the petition for the limited purpose recommended by the referee, and thereafter to take such further proceedings as are provided by law.

Herndon, Acting P. J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied October 23, 1968.