[Civ. No. 35232. Second Dist., Div. Four. Apr. 30, 1970.]

JAMES B. LUCHINI, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
McCARTER LYDON ELECTRIC CORPORATION et al., Respondents.

**COUNSEL**

Leonard L. Freedman for Petitioner.

Everett A. Corten, Sheldon M. Ziff, Herlihy, Herlihy, Jones & Nelson and Kennis T. Jones for Respondents.

**OPINION**

**KINGSLEY, J.**—Petitioner seeks review and annulment of an award of permanent disability indemnity, issued by the Workmen's Compensation Appeals Board on reconsideration of a referee's decision. ■ The board refused to incorporate, as factors of permanent disability, certain work restrictions recommended by the medical experts. The ground relied on by the board was that the restrictions were "prophylactic" in nature,

designed only to avoid further injury and were not restrictions imposed "by reason of" his disability. We disagree.

On June 11, 1964, petitioner, an electrician, sustained a compound fracture of the right leg just above the ankle when a ladder on which he was working collapsed. In November of 1965 he received a bone graft. Medical experts agree that, as a result of the industrial injury, petitioner has permanent disability comprised of shortening of the right leg, atrophy of the thigh and calf muscles of the right leg, limitation of motion in the low back, ankle joint and right foot which require use of a lumbosacral support and heel lift on the right shoe, and increasing pain in the low back and right leg on increasing activity.

Each of the several medical experts who examined petitioner expressed the opinion that the residuals from the industrial injury restrict him in the performance of work activities. Dr. Gamble, on January 16, 1967, reported that petitioner's condition was permanent and stationary and that, based upon measurable atrophy and restriction of joint function, it was his opinion that petitioner did not have the strength in his right lower extremity to safely do the climbing required in his trade as an electrician. Dr. Kramer reported, on February 21, 1967, that petitioner "should be prophylactically restricted from any activity that requires working above the ground level, such as on girders or climbing ladders, or that requires walking over rough ground or dirt such as construction sites, because of the loss of hindfoot, that is eversion-inversion motion." He further stated: "While he could walk on rough ground, his difficulties would be in the nature of moderate with either walking on rough ground or continuous standing or walking for four hours." Dr. Abramson reported, on August 29, 1967, that the only type of job which petitioner could perform would be one at which he could sit or stand at will.

In proceedings before the referee Dr. Schoneberg was appointed as agreed medical examiner. On January 8, 1968, he expressed the opinion that petitioner should be "rehabilitated to more sedentary work than that of an electrician, as he obviously cannot stand for prolonged periods, climb ladders or walk on rough ground."

Upon reconsideration, Dr. Thomason of the medical bureau examined petitioner and reported that he "should be limited to light work and should not walk on uneven terrain or do any climbing." Subsequently, on cross-examination, Dr. Thomason testified that he determined these limitations both from the subjective complaints of petitioner due to the right leg and the nature of the injury, that the reason petitioner should be precluded from walking on uneven terrain and from climbing is to avoid twisting motions which may cause the bone graft to fracture as well as to avoid the

danger of falling, and that any person "with the type of injury and bone graft which occurred to applicant should do no lifting and particularly no heavy lifting and certainly not over 25 pounds and certainly not where he will have to twist as he would run into the same hazards as would be experienced if he walked on uneven terrain."

The appeals board, although relying upon Dr. Thomason's opinion in finding the factors of permanent disability, refused to incorporate any of the work restrictions in its instructions to the rating bureau on the ground that preclusion from these activities was to avoid reinjury and not "by reason of disability."

Petitioner contends: (1) that the appeals board, having chosen to rely upon Dr. Thomason's opinion, must in fairness give full recognition to the doctor's imposition of work restrictions; (2) that, in any event, the undisputed medical evidence compels findings of work restrictions; and (3) that the appeals board opinion fails to comply with Labor Code section 5908.5, in that the board fails to state why work restrictions to avoid reinjury are not rateable disabilities.

The answer of the appeals board simply reiterates, without citation of authority, that prophylactic working restrictions are not rateable factors of permanent disability. The answer of respondents, the employer and insurer, also cites no authority for this proposition.

■ While there is no statutory definition of permanent disability, it has been judicially recognized that a permanent disability is one which causes impairment of earning capacity, impairment of the normal use of a member, or a competitive handicap in the open labor market. (*State Comp. Ins. Fund* v. *Industrial Acc. Com.* (*Hutchinson*) 59 Cal.2d 45, 52 [27 Cal.Rptr. 702, 377 P.2d 902].)[1] The cited case recognizes that there may be compensable permanent disability even where there has been no loss of a member of the body or loss of its function; there is compensable permanent disability to the extent that an industrial injury causes a decrease in earning capacity or in the ability to compete in the open labor market and it is the nature of the disability and not the anatomical part of the body to which the injury was inflicted which must be considered in computing compensation.

In some jurisdictions, but not in others, an employee who suffers a specific injury relating solely to an injured member is restricted to the scheduled compensation even though he is in fact totally disabled from

---

[1] In the cited case the court's opinion is directed to questions involving the determination of compensation for subsequent injury but the basic propositions are the same.

work, although this restriction does not apply in any case where the injury to the specific member has spread and affected the body as a whole or the employee has suffered additional injury to other areas of the body. (99 C.J.S., § 310, p. 1118; 2 Larson, § 58.20, pp. 88.55 et seq.)

In a Nebraska case (*Haler* v. *Gering Bean Co.* (1957) 163 Neb. 748 [81 N.W.2d 152]), this contention was made on facts similar to those here. There the employee suffered similar fractures of both legs, malunion and bone graft, abnormal alignment of bones at the site of fractures and leg shortening, which resulted in faulty locomotion and changed the weight-bearing plane of his body, materially affecting the back as well. It was held that the employee was entitled to compensation for total disability.

■ We conclude that the case at bench is controlled by the decision in *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627 [83 Cal. Rptr. 208, 463 P.2d 432], filed after the proceedings before the board in this case. In *LeVesque,* the employee had suffered industrial injuries to his knees and elbow. After a period of treatment, he was partially released by the physician by whom he was treated at the direction of the insurance carrier with the limitation that: "He may not lift more than 25 pounds of weight." The board refused him further disability payments, relying, as here, on the theory that that limitation was only "prophylactic advice rather than rigid restrictions." The Supreme Court annulled the award, saying at page 640: "In essence, the referee's report confronts petitioner with the grisly choice of obeying the medical advice of his treating physician or risking further injury by following the medical views of the referee." The same statement is applicable here.[2]

The employer and insurer, in their answer to the petition, contend that it was established by cross-examination of the rating specialist that, even if restrictions limiting petitioner to light work, from standing for prolonged periods, from climbing ladders or from walking on uneven ground, had been added to the instructions for rating pertaining to the right lower extremity, they would not add to the rating, and that it was, therefore, immaterial that the board did not include these factors in its instructions. We have read the portions of the record cited to us. They are confusing in the extreme and we are not convinced that the rating specialist was engaged in anything other than a semantics debate over the proper phrasing to be used to cause him to include the above factors in his rating analysis.

---

[2]It is, of course, by now well settled that the board, if it relies on the report or reports of examining physicians, must give full weight to all of the findings of such doctors and that it may not omit a factor of disability unequivocally recognized by the doctors. (*Mann* v. *Workmen's Comp. App. Bd.* (1968) 265 Cal.App.2d 333 [71 Cal.Rptr. 237]; *Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd.* (*Ratzel*) (1967) 252 Cal.App.2d 327 [60 Cal.Rptr. 442].)

It has long been recognized that in rating back disabilities there are four major elements to be considered: limitation of motion; pain; weakness; and limited endurance; and the basis for rating is usually restriction on activity produced by a combination of these four elements plus additional factors such as the use of appliances, etc. These plateaus or guidelines for rating are well known and a limitation to light manual labor is 40 percent while a limitation to light work is 50 percent before adjustment for age, occupation, etc., sedentary work 70 percent. (See 1 Hanna, § 11.02[3].) These guidelines are also used for rating neck disabilities, heart disease, impaired pulmonary functions, and weakness of abdominal muscles. No reason appears why these guidelines are not properly applied in other cases when uncontradicted medical opinion compels a similar restriction on activity although the restriction is produced by injury to a leg or other specific part of the body.

In any event, the board cannot rely on some administrative procedure to deny to petitioner a disability award commensurate with the disability that he has suffered. Whether compliance with the law as laid down in *LeVesque,* and in this opinion, requires amended instructions to the rating specialist, or a revision of the rating procedures, or whether it can be accomplished under section 4660, subdivision (a) of the Labor Code, are procedural matters for the board to determine on remand; its duty is to take whatever steps are necessary to insure that the award of permanent disability granted petitioner takes fully into consideration the work restrictions imposed by the treating physicians.

It follows from what we have said that, in the terminology now prescribed by *LeVesque,* the board's award "lacks substantial evidence" to support it and that it must be annulled.

The award is annulled; the case is remanded to the board for further proceedings consistent with this opinion.

Jefferson, Acting P. J., and Alarcon, J.,* concurred.

A petition for a rehearing was denied May 26, 1970, and the opinion and judgment were modified to read as printed above.

---

*Assigned by the Chairman of the Judicial Council.