[Civ. No. 25973. Fourth Dist., Div. Two. Jan. 25, 1982.]

CITY OF SANTA ANA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and THOMAS
E. TAYLOR, Respondents.

COUNSEL

Kegel, Tobin & Hamrick and Frederick T. Guckenberger for Petitioner.

Greene & Diamond and Harold L. Greene for Respondents.

OPINION

KAUFMAN, J.—Petitioner, City of Santa Ana (city), seeks review and annullment of orders of the Workers' Compensation Appeals Board (Board) that, in effect, award respondent Thomas E. Taylor (applicant) permanent disability benefits on a disability rating of 56 percent based upon its determination that the applicant is limited to "light work." The city contends the Board's orders do not sufficiently state the evidence relied on and the evidence relied on by the Board does not constitute substantial evidence to support its decision. We agree, and the orders will be annulled.

The applicant was employed as a police officer by the city which is legally uninsured. He filed two applications for adjudication of claim alleging injuries to his right hip on October 22, 1975, and January 23, 1978. Industrial injury was admitted by the city in respect to one of the claims and disputed in the other. The trial judge ultimately determined, however, that the disputed injury was also industrially caused.

The applicant was referred for examination and report to Arthur F. Mead, M.D., as independent medical examiner. Dr. Mead submitted a report dated June 12, 1979, in which he diagnosed: "Chronic residuals of right buttock-upper thigh contusion sprain-strain associated low grade sciatic right neuritis without gross objective motor, sensory or reflex abnormalities, etc." Subjective factors were stated as: ". . . mild right buttock and right leg discomfort-pain. This pain might be aggravated to slight pain by factors tending to aggravate in form of pressure or continued stretch on the right buttock sciatic elements."

Dr. Mead was cross-examined on his report by deposition taken in his office on March 26, 1980.

Based on the entire medical record, including the report and testimony of Dr. Mead, the WCAB trial judge submitted rating instructions to

a permanent disability rating specialist which were evaluated as producing a 24-1/2 percent permanent disability rating. Findings and awards issued awarding permanent disability benefits on a rating of 24-1/2 percent as apportioned between the two injuries.

The applicant petitioned the Board for reconsideration urging that Dr. Mead's report and testimony established a work restriction limiting him to "light work" and that the 24-1/2 rating failed to take account of the "light work" limitation and was inadequate.

In his report and recommendation in respect to the applicant's petition for reconsideration, the trial judge stated: "As to permanent disability caused by these two incidents, Dr. Mead states:

"'Objective factors of permanent disability are of a mixed nature in that he shows consistent right superior buttock (gluteal palpation[)] tenderness, but none elsewhere, this none elsewhere tending to rule out a gross hysterical type of involvement for the patient is definitely consistent about the localization of the tenderness. He shows right supine straight leg raising positive stretch signs but then on the other hand shows a negative sitting straight leg raising test bilaterally and no gross neurologic deficit, negative EMG (W. D. Lindgren, M.D.). His x-rays of the pelvis and lumbosacral spine are also within normal limits.

"'From a disability rating standpoint this patient is in possession of a right buttock sciatic mechanism which limits him to work[1] with respect to the right hipmechanism. On the other hand he can stand or sit for an 8 hour period either posture alternatively but it would appear that he cannot perform police type work with reference to the need of such work for carrying a heavy gun belt and associated accessories about the right waist and right upper buttock particularly.'

"The Court found ... the disability for the two incidents to be as follows:

"1. Pain in the right buttock and right leg areas in degree of slight, increasing to moderate[2] when direct pressure is applied to the right buttock or wearing or carrying heavy weights about the waist.

---

[1]In his deposition testimony Dr. Mead stated that the word "light" should have appeared before the word "work" but was inadvertently omitted.

[2]The trial judge allowed for greater pain ("moderate") than did Dr. Mead ("slight").

"2. Right buttock and right leg disability precluding applicant from police type work because of need to carry a heavy gun belt and associated accessories about the right waist and right upper buttock. (See rating instructions.)

"It is submitted that the instructions to the Disability Evaluating Bureau adequately describes applicant's permanent disability caused by the two incidents referred to."

The Board issued an order granting reconsideration and a decision after reconsideration amending the findings and award insofar as here pertinent to increase the disability rating to 56 percent and to increase the award accordingly. The order and decision itself contains no statement of reasons or specification of evidence but refers to "the reasons set forth in the Opinion this day being filed and served concurrently herewith."

The pertinent portion of the Board's opinion reads: "We *need not determine* if the judge's rating instructions are justified by *the discussion of the factors of disability* contained in the June 12, 1979 report of Dr. Arthur F. Mead, the agreed medical examiner, because Dr. Mead clarified his views at the deposition of March 26, 1980. Dr. Mead testified that he believes that the applicant should be limited to light work as defined in the Guidelines for Work Capacity of the Division of Industrial Accidents. (See *Schedule for Rating Permanent Disabilities*, Division of Industrial Accidents.) (Transcript of Deposition, p. 12.)

"We will grant reconsideration and rerate the applicant's disability *based on the restriction to light work recommended by Dr. Mead,* which restriction we believe is within the range of the medical evidence presented. That restriction warrants a standard rating of 50%.... [The applicant] is ... entitled to have that rating calculated based upon his age and occupation at the time of the most recent injury.... Accordingly, we will enter a finding that the applicant's two injuries combined to produce permanent disability of 56% after adjustment for age and occupation." (Italics added.)

The city petitioned for reconsideration of the Board's order granting reconsideration and decision after reconsideration, urging insofar as is here pertinent that in overruling the trial judge the Board selected only an isolated portion of the testimony of Dr. Mead and that considered as a whole, Dr. Mead's report and testimony did not constitute substantial

evidence to support a "light work" restriction and disclosed that the restriction to "light work" as understood by Dr. Mead was substantially different from the meaning ascribed to that expression in the Guidelines established by the Board.

The Board denied reconsideration, stating in pertinent part: "As to the defendant's contentions that we erred in finding that the two injuries . . . caused permanent disability of 56%, we remain convinced that our findings are justified by the opinion of the independent medical examiner, Dr. Arthur F. Mead. We explained in our previous Opinion that we found persuasive and relied upon the opinion of Dr. Mead expressed in his deposition testimony of March 26, 1980, that the applicant's disability limits him to 'light work' as defined in the Guidelines for Work Capacity of the Division of Industrial Accidents (see the *Schedule for Rating Permanent Disabilities*, Division of Industrial Accidents.) (Transcript of Deposition, page 11.)

"The defendant argues that Dr. Mead's opinion that the applicant should be limited to light work does not accord with his description of the applicant's subjective complaints and specific limitations. *However, Dr. Mead's testimony indicates that he is familiar with the definition of 'light work' contained in the Guidelines for Work Capacity. (Schedule for Rating Permanent Disabilities, supra.)* [Emphasis added.]

"The use by medical experts of a Guideline category for the characterization of an employee's permanent disability in lieu of a more specific and detailed characterization of the applicable factors of disability is a common and proper practice. It simplifies the rating process and promotes uniformity of ratings. The defendant has not shown that Dr. Mead's use of the Guideline category of limitation to light work was based on an erroneous understanding of the disability included in that category even though the defendant had an ample opportunity to clarify that point in its cross-examination of Dr. Mead at the deposition. In the absence of persuasive evidence that Dr. Mead did not understand and misused the Guideline categories, we will accept his characterization of the applicant's disability."

On review the city renews the contentions made in its petition for reconsideration.

■ Although the considered expert opinion of one physician may constitute substantial evidence supporting a determination of the Board

(*Smith* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]; see *Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656]; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 639 [83 Cal.Rptr. 208, 463 P.2d 432]) a physician's opinion based upon a misunderstanding of applicable legal standards or the relevant facts cannot constitute substantial evidence to support the Board's determination. (*Place* v. *Workmen's Comp. App. Bd., supra*, 3 Cal.3d 372; *Smith* v. *Workmen's Comp. App. Bd., supra*, 71 Cal.2d at p. 593; *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 798 [69 Cal.Rptr. 88, 441 P.2d 928].)

Moreover, when the Board relies upon the opinion of a particular physician in making its determination, it may not isolate a fragmentary portion of his report or testimony and disregard other portions that contradict or nullify the portion relied on; it must give fair consideration to all of his findings. (E.g., *Abril* v. *Workers' Comp. Appeals Bd.* (1976) 55 Cal.App.3d 480, 486 [127 Cal.Rptr. 483]; *Franklin* v. *Workmen's Comp. Appeals Bd.* (1971) 18 Cal.App.3d 682, 684 [96 Cal. Rptr. 201]; *Luchini* v. *Workmen's Comp. App. Bd.* (1970) 7 Cal.App. 3d 141, 145, fn. 2 [86 Cal.Rptr. 453]; *Mann* v. *Workmen's Comp. App. Bd.* (1968) 265 Cal.App.2d 333, 339 [71 Cal.Rptr. 237].)

■ Further, a decision of the Board either denying or granting a petition for reconsideration or amending the original findings or award after reconsideration must "state the evidence relied upon and specify in detail the reasons for the decision." (Lab. Code, § 5908.5.) And if the evidence relied upon and the reasons stated for the decision do not support it, the decision must be annulled. (*Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 893 [83 Cal.Rptr. 591, 464 P.2d 47]; *Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 406-407 [71 Cal.Rptr. 678, 445 P.2d 294]; *Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753, 755 [68 Cal.Rptr. 825, 441 P.2d 633].)

■ Finally, on review for substantial evidence in support of the Board's determination, the "test of substantiality must be measured on the basis of the entire record, rather than by simply isolating evidence which supports the board and ignoring other relevant facts of record which rebut or explain that evidence." (*Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451]; accord: *Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978]; *LeVesque* v. *Workmen's*

*Comp. App. Bd., supra,* 1 Cal.3d at pp. 638-639, fn. 22; *Hurwitz v. Workers' Comp. Appeals Bd.* (1979) 97 Cal.App.3d 854, 861, fn. 3 [158 Cal.Rptr. 914].)

■ A review of the record in this case discloses that in granting the applicant's petition for reconsideration and amending the findings and award and in denying the city's petition for reconsideration the Board failed to adhere to the foregoing principles which should have governed its determination.

The only evidence referred to by the Board as supporting its determination that the applicant was subject to a "light work" restriction was Dr. Mead's deposition testimony "that he believes that the applicant should be limited to light work as defined in the Guidelines for Work Capacity of the Division of Industrial Accidents," citing page 12 of the deposition transcript.[3] The Board did not contradict or refer to evidence contrary to the city's contention that Dr. Mead's opinion the applicant was restricted to light work did not accord with his description of the applicant's subjective complaints and specific limitations. Rather, it purported to answer that contention by stating, without pointing to any specific testimony by Dr. Mead, that his "testimony indicates that he is familiar with the definition of 'light work' contained in the Guidelines for Work Capacity" established by the Board.

In so concluding, the Board erred in two respects. First, it failed to state the evidence it relied on to come to the crucial conclusion that Dr. Mead was familiar with the meaning of "light work" as utilized by the Board. The purpose for the requirement that the Board state the evidence relied on is to help the Board avoid careless or arbitrary decisions and to make the right of review more meaningful by assisting reviewing courts in ascertaining the basis for the Board's decision. (*Goytia v. Workmen's Comp. Appeals Bd., supra,* 1 Cal.3d at p. 893.) Neither purpose is served by a general reference to the entire testimony of the physician relied on by the Board.

---

[3]In the first sentence of the next succeeding paragraph the Board did state that it believed the "light work" restriction recommended by Dr. Mead "is within the range of the medical evidence presented." We do not believe the Board meant thereby to refer to evidence other than the testimony of Dr. Mead. If it did, the expression "within the range of the medical evidence presented" does not satisfy the statutory requirement that the Board "state the evidence relied upon and specify in detail the reasons for the decision." (Lab. Code, § 5908.5.)

Secondly, the Board's conclusion is not supported by the record. It is true that in both his report (as corrected at the time of his deposition [see fn. 1, *ante*]) and in his deposition testimony Dr. Mead made reference to the term "light work." It is also true that at his deposition in answer to a question whether it would be desirable that the applicant be permitted to sit or stand, depending upon the nature of his pain, Dr. Mead stated: "This would be ideal, but I still think he falls within the definition of 'light work.' That's essentially what I was describing in the language of the art by the Industrial Commission's criteria. This is a criteria for 'light work' .... And that's what I feel that he has." However, immediately after so saying, he interrupted the questioner and stated: "A disability that limits him to light work *with respect to his right hip. I didn't say for any other part.*" (Italics added.)

It is little wonder that the WCAB trial judge did not submit rating instructions based on a "light work" restriction. As utilized by the Board the expression that a person is limited to "light work" cannot apply to a particular joint, muscle or limb; it applies to the whole individual and means that he is not employable except in service requiring only "light work," work requiring "a minimum of demands for physical effort." (WCAB guidelines for work capacity.)

Further, when Dr. Mead was asked by the city's attorney at the deposition to define his understanding of the term "light work" he replied: "That a patient, *with respect to the part, does not have to do rapid, repetitive movements or very heavy movements;* that they can use this part in a neutral plain [*sic*]. Say, not working against gravity particularly; say, not climbing stairs with, for instance, the hip or rapid descent down inclines, stairs or whatever. But particular [*sic*] ascending upstairs or ladders. [¶] Neutral, working in a neutral plain [*sic*] but *not required to do rapid, repetitive movements, such as running.*" (Italics added.)

Dr. Mead did not testify that he was familiar with the guidelines for work capacity of the Division of Industrial Accidents or the schedule for rating permanent disabilities of the Division of Industrial Accidents. His reference to "the language of the art by the Industrial Commission's criteria" could conceivably be taken as a reference to the guidelines or the schedule were it not for his description of the "light work" restriction applying to the applicant's right hip only and were it not for the fact that the physical limitations he ascribed to the applicant were

wholly inconsistent with a restriction to "light work" as that expression is defined by the Board.

Although Dr. Mead stated he did not believe the applicant could · wear a heavy weight around his waist such as a gun in a holster, he stated the applicant had a good range of motion in his back and opined that the applicant was not restricted in lifting except possibly in respect to very heavy weights. Although he believed the applicant would have increased pain with running and with walking steps or steep grades or sitting for protracted periods of time, he testified that the applicant could work an eight-hour day involving mixed sitting and standing and that he could walk reasonable distances on a level plane. Clearly the disability as described by Dr. Mead did not limit applicant to work requiring "*minimum*" physical effort.

We agree with the Board that the use by medical experts of a guideline category for the characterization of an employee's permanent disability, if knowledgeably made, may be a useful tool for simplifying the rating process. However, when as here the Board isolates and accepts a physician's testimony that the injured worker is restricted to "light work" when the record conclusively demonstrates that the physician did not use that expression in the same way and with the same meaning ascribed to it by the Board, the Board's reliance on the isolated bit of testimony is reminiscent of nothing so much as the old Groucho Marx television program in which Groucho would say to the contestant: "Say the magic word and the duck will come down and you'll win a hundred dollars."

The order granting reconsideration and the decision after reconsideration and the order denying the city's petition for reconsideration are annulled.

McDaniel, J., concurred.

**MORRIS, Acting P. J.**—I respectfully dissent.

The Workers' Compensation Appeals Board (Board) granted reconsideration and rerated applicant's disability based upon a restriction to "light work."

In my opinion the restriction to "light work" is supported by substantial evidence. The independent medical examiner, Dr. Arthur Mead,

testified that in his opinion applicant's disability limited him to "light work." The Board found that Dr. Mead's testimony otherwise demonstrated that he was familiar with the guidelines' definition of "light work" and rerated applicant's disability accordingly.

The majority concede that the expert opinion of one physician may constitute substantial evidence supporting a determination of the Board. However, they have in effect reweighed the evidence and concluded that Dr. Mead's testimony does not demonstrate that he understood the guidelines' definition of "light work."

In my opinion the evidence supports the Board's finding with respect to the significance of Dr. Mead's testimony. The Board's guidelines for work capacity define "light work" as follows: "Disability resulting in limitation to light work contemplates the individual can do work in a standing or walking position, with a minimum of demands for physical effort."

Dr. Mead testified, inter alia, that applicant's condition would be aggravated by normal pressure on or continued stretching of the right buttock sciatic mechanism; that aggravation could result from applicant's wearing his gunbelt or sitting against any object that might press against the injured area; that applicant should avoid walking stairs, climbing ladders or running, although he might walk on a level surface. Dr. Mead also testified that in order to avoid aggravation applicant should spend approximately half his time sitting and half standing, and that applicant should be in a work situation where he could sit or stand alternatively as the pain in his hip dictates. This testimony is entirely consistent with the guidelines' definition of "light work" and supports the doctor's statement that he was using the term "light work," as language of art as used in the Board's guidelines. Moreover, it provides evidence supportive of the doctor's conclusion that applicant's disability restricted him to "light work."

It is the function of the reviewing court to examine the entire record to determine whether the conclusion of the Workers' Compensation Appeals Board was supported by substantial evidence. (Lab. Code, § 5952; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432]. The substantial evidence rule does not permit this court to reweigh the evidence and substitute its judgment for the judgment of the Board. It may not isolate and accept what it perceives as conflicting evidence and disregard supportive evidence.

Furthermore, it is not the proper function of this court to independently weigh the conflicting evidence against the evidence supporting the Board's decision. Rather, it is the duty of the reviewing court to determine from the whole record whether the conflicting evidence so discredits the supportive evidence as to render it insubstantial. (*Mendoza* v. *Workers' Comp. Appeals Bd.* (1976) 54 Cal.App.3d 820, 823 [127 Cal.Rptr. 173]. Dr. Mead's opinion was not discredited. His testimony provides substantial evidence in support of the Board's determination in this case.

The petition of respondent Taylor for a hearing by the Supreme Court was denied May 12, 1982. Bird, C. J., was of the opinion that the petition should be granted.