[Civ. No. 46769. Second Dist., Div. Two. Feb. 20, 1976.]

JUAN ABRIL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
ARGO CROP COMPANY et al., Respondents.

COUNSEL

Brundage & Roseman and Lawrence Silver for Petitioner.

Allen, Rhodes & Sobelsohn and Jeffrey M. Wilson for Respondents.

OPINION

BEACH, J.—Petitioner, the employee and applicant in compensation proceedings, was awarded 37 percent partial permanent disability in connection with a disability of his left eye and related work restrictions. He contends that the award is inadequate in that the work restrictions were not taken into account in arriving at the rating. We agree that the rating was reached by an erroneous rating assumption and is improper in understating the reality and ratability of so-called prophylactic work restrictions. Accordingly, we annul the award and remand the case for further proceedings.

FACTS

The applicant, 45, a heavy equipment operator, industrially injured his left eye. Following a course of treatment, including several operations, he lost the lens to that eye. His resulting vision was "20/100 or less" and is described as "finger counting." He had other problems with the eye and with his work, as we shall later recite. The only controversy that arose in his compensation proceeding was the rating of his partial permanent disability and that is the extent of the dispute on this petition.

The rating, as ultimately reached by the rating specialist, compensation judge and appeals board, was based upon the report of a single physician, Dr. Aronberg. There is no argument that the report does not accurately indicate the factors of disability. In describing the applicant's work handicap the report stated:

"In addition to the disability caused by blindness of the left eye, there is disability based upon subjective symptoms. These symptoms of ocular discomfort, light sensitivity, irritation, and watering of the eye produce partial disability, considered to be slight in degree.

"There is no treatment which is likely to improve the vision. Nevertheless, Mr. Abril should remain under ophthalmologic care indefinitely because of the prospect of further complications such as recurrent retinal detachment, exotropia, phthisis, etc. The type of frequency of the treatment is left to the judgment of the attending ophthalmologist.

"It is doubtful that Mr. Abril should return to his occupation of heavy equipment operator. If he does, he should avoid vigorous activity, lifting heavy weights (over 25 pounds), any jarring, sudden motion, etc.

"Probably the wisest course would be to enter another occupation. There is only one healthy, seeing eye left. The present occupation presents considerable risk to this remaining eye, and I would suggest a change of employment."

From the medical record it was clear that the principal concern was with the risk of total, irreparable retinal detachment, which would have resulted in total blindness in the eye, among other complications. In his rating instructions (which serve as the findings of fact), the compensation judge related the restriction against vigorous activity to that risk of retinal detachment. The instructions read:

"Please rate the objective factors contained in Dr. Aronberg's report dated September 13, 1974.

"Also rate for slight ocular discomfort, light sensitivity, irritation and watering.

"To avoid the risk of further retinal detachment, consider the applicant restricted from vigorous activity, heavy lifting and activity involving jarring and sudden motion."

The Rating Bureau's recommended rating on those instructions came to 37 percent. In cross-examination of the rating specialist the particulars of that recommended rating were made clear. Line 2.341 of the standard rating tables assigns 25 percent to loss of vision in one eye to "20/100 or less." In this case, mechanical adjustment of this standard rating for age and occupation resulted in an upward adjustment of the 25 percent standard rating to 32 percent. Only that part of the rating could be extracted from the standard tables and the remainder, and hence the

overall rating, became a matter of judgment, referred to as a "judgment rating."

In the rating specialist's judgment the second paragraph of the instructions, on watering of the eye and the like, called for an increment of 2 percent. There is no dispute about this rating factor.

The remaining portion of the instructions, and specifically the so-called "work restriction" against vigorous activity and the like, was assigned a value of 3 percent, resulting in the total rating of 37 percent. It is the paucity of this 3 percent increment and the basis for it that remains in dispute.

The rating specialist stated the basis for his rating at some length, but essentially he explained that in cases of injury to one eye the 25 percent standard rating for loss of vision becomes a "judgmental ceiling" which the rating cannot exceed. He explained that ceiling and the exceptional 3 percent increment he made thereto in this case as follows:

"Well, three percent is given because the disability described in the third paragraph is a preclusion from certain work activities for a particular purpose; that is, to avoid further retinal detachment. The eye itself is already, for rating purposes, blind. Further retinal detachment will not increase any rating for vision in that eye. So that, even if the work activities were engaged in, the disability would not be aggravated. However, there is a consideration that, if this detachment occurs, there will be necessary surgery; disability attendant to that; inconvenience; time off work for the injured person. In consideration of that, three percent is added to the rating."

The applicant insisted, as he does on this petition, that the increment should have been simply addition of category (d) from the "Guidelines for Work Capacity." That category, labeled "Disability Precluding Heavy Lifting, Repeated Bending and Stooping," carries a standard rating of 25 percent by itself. When asked why he did not simply add the value of category (d), which in a back case, for example, would rate at 25 percent, the rating specialist explained:

"Well, the disability doesn't warrant it. If your applicant had a necessity to avoid these [activities] because he would have a retinal detachment as a result, the upper level of disability that you would have to guard against would not be 100 percent and the rating would be

considerably different [than] when you are dealing with the back. There, the upper level of disability is 100 percent. It's a different skein of values; a different frame of reference."

The compensation judge and appeals board adopted the recommended rating, thereby giving rise to this petition for review on behalf of the applicant.

## DISCUSSION

■■■ As is not unusual, we find the appropriate result to lie approximately equidistant between the positions of these contending parties. Contrary to the contention of the applicant, simple addition of the 25 percent value from category (d) of the guidelines would not be appropriate for several reasons. By their terms those guidelines are limited to "pulmonary, heart disease, abdominal weakness, spinal and lower extremity disabilities." (For a discussion of the guidelines, see *Luchini* v. *Workmen's Comp. App. Bd.,* 7 Cal.App.3d 141 [86 Cal.Rptr. 453].) But moreover, when applied, the descriptive categories from the guidelines become a unitary approach to rating the entire disability, which may include loss or impairment of a body member, as well as work restrictions or limitations, actual or prophylactic. In other words, the categories are a measure of overall disability and are a very direct implementation of Labor Code section 4660, which defines "disability" as "the diminished ability . . . to compete in an open labor market." To use the categories directly in an eye case, in view of the specific values assigned by the standard rating tables to various impairments of the eyes, would result in use of opposing approaches to the rating of a unitary disability.

On the other hand, we cannot accede to the appeals board's position that every injury to an eye is limited in its disabling effect to the 25 percent value assigned to the loss of vision in the standard rating tables. The petition of the board is underscored in its letter response to this petition as follows:

". . . the eye injury herein is not the same as a back injury in that the prophylactic lifting restriction in this case must be considered in conjunction with the fact that petitioner was also rated for a legally blind eye. The purpose of the prophylactic lifting restriction is to prevent subsequent reinjury to petitioner's blind eye. . . . The position advocated by petitioner would result in a higher disability rating for a precaution-

ary prophylactic restriction than if the subsequent reinjury sought to be prevented were to in fact occur."

We understand the board's view, but we cannot agree with it. We understand that, in a sense, the eye has been bought and paid for and that the symmetry of the standard tables would be rounded out by leaving matters stand at that. Insofar as rating standardization goes, however, the board's effort is to standardize dissimilar cases. An eye can be injured so that the entire bodily impairment and work handicap is limited to a loss of vision to "20/100 or less." But that is not all eye cases and it is not this case. ■ "It is well settled that the board, if it relies at all on the report and testimony of a medical examiner, must give full weight to *all* of the findings of that doctor, and may not omit a factor of disability described by him. . . . An award which ignores such factors lacks substantial evidence to support it." (Italics in original.) (*Franklin* v. *Workmen's Comp. Appeals Bd.*, 18 Cal.App.3d 682, 684 [96 Cal.Rptr. 201].) The increase in disability in this case may be "intangible," but it is nonetheless real. As explained in *Luchini* v. *Workmen's Comp. App. Bd.*, *supra*, 7 Cal.App.3d 141, ". . . it has been judicially recognized that a permanent disability is one which causes impairment of earning capacity, impairment of the normal use of a member, or a competitive handicap in the open labor market. . . . there may be compensable permanent disability even where there has been no loss of a member of the body or loss of its function; there is compensable permanent disability to the extent that an industrial injury causes a decrease in earning capacity or in the ability to compete in the open labor market and it is the nature of the disability and not the anatomical part of the body to which the injury was inflicted which must be considered in computing compensation."

■ Also, as explained and illustrated in *Nielsen* v. *Workmen's Comp. Appeals Bd.*, 36 Cal.App.3d 756, 758 [111 Cal.Rptr. 796], a rating that ignores the intangible or nonbodily element "is not rationally related to Applicant's diminished ability to compete on the open labor market as is required by Labor Code section 4660, subdivision (a). It is, therefore, arbitrary, unreasonable and not supported by the evidence in light of the entire record."

■ Most simply, appropriate rating of the case at bench gets down to a question of the proper rating assumption or supposition. The board and rating specialist felt impelled, because it is the most economical way of looking at the matter, to assume that this applicant will go ahead,

ignore the doctor's restrictions, and incur the consequences. Those consequences are admittedly serious, including surgery and total loss of vision in the eye, but in the board's and specialist's estimate those considerations do not "rate" appreciably for the reasons already mentioned. That is an unnecessarily grim view of the case. The case is analytically similar to the one in *LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 640 [83 Cal.Rptr. 208, 463 P.2d 432], where such a view was condemned. In *LeVesque,* the employee had suffered industrial injuries and was partially released by the physician with the limitation that: "He may not lift more than 25 pounds of weight." The referee refused him further disability payments, relying on the theory that the limitation was only "prophylactic advice rather than rigid restrictions." The Supreme Court annulled the award, saying, "In essence, the referee's report confronts petitioner with the grisly choice of obeying the medical advice of his treating physician or risking further injury by following the medical views of the referee." Here, the rating assumption should be that the applicant will obey the medical advice of the physician. The resulting need is merely for a judgmental combination of the rating value of the loss of vision and the value of the work restriction. Put conversely, the need is to eliminate the "overlap" that results if the loss of vision (25 percent) and the work restriction (25 percent) are combined by simple addition, for they are aspects or "factors" of the same disability.

We do not purport to intrude upon the rating expertise by making the necessary rating judgment, but we do observe that there is nothing unusual about "the problem of rating separate but overlapping factors of disability which arise from the same industrial accident." *Hegglin* v. *Workmen's Comp. App. Bd.,* 4 Cal.3d 162, 172-174 [93 Cal.Rptr. 15, 480 P.2d 967]. As the court said in *Hegglin,* "we are concerned with an asserted overlap of two factors of disability which comprise part of the permanent disability suffered by petitioner as a result of a single industrial accident. . . . [¶] We hold that in cases involving multiple factors of disability caused by a single industrial accident the Board must, in any instructions it may direct to the rating bureau, fully describe each separate factor of disability. Any overlap of the factors of disability thus described is adequately taken into account, and the pyramiding of disabilities is properly avoided, by application of the multiple disabilities rating schedule."

It may be that the rating specialist will not be satisfied in this case with any combined rating or analogy thereto that can be found in the multiple

disabilities tables. In that event, an unscheduled combined rating according to judgment will be appropriate, but the judgment must be exercised on the rating assumption we have outlined above.

The award is annulled and the case is remanded to the Workers' Compensation Appeals Board for further proceedings consistent with this opinion.

Fleming, Acting P. J., and Compton, J., concurred.