[Civ. No. 16219. Third Dist. Feb. 16, 1977.]

CARRIE D. MILES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, THE REGENTS
OF THE UNIVERSITY OF CALIFORNIA et al., Respondents.

**COUNSEL**

Green & Azevedo and Donald C. Green for Petitioner.

Rosenthal & Leff, Irwin Leff, Barry Williams and Banks & Leviton as Amici Curiae on behalf of Petitioner.

John W. Jackson, James J. Volk, George S. Bjornsen, Arthur Hershenson and Robert A. La Porta for Respondents.

## Opinion

**REGAN, Acting P. J.**—In this proceeding the plaintiff seeks review of the decision of the Workers' Compensation Appeals Board (Board) denying her petition for reconsideration. This decision left in effect the ruling of the workers' compensation judge that the costs incurred for the services of a clinical psychologist were to be a lien against compensation, and not a charge to the carrier.

Plaintiff, employed as a nurses' aide by the Regents of the University of California at Sacramento Medical Center, sustained a cumulative type industrial injury. She suffered from both emotional and gastrointestinal symptoms which produced disability and a need for medical treatment.

Plaintiff sought and obtained medical treatment from Kaiser Foundation Hospitals/Permanente Medical Group under her private health insurance plan.

Plaintiff filed an application for adjudication of claim with the Board alleging that she had sustained gastric colitis as a result of the stress and tension of her employment. The respondent employer, and its insurance carrier, refused to provide any medical treatment or other type of workers' compensation benefits.

Plaintiff was referred by her attorney to Betty Kalis, Ph.D., a clinical psychologist. Dr. Kalis concluded that plaintiff's "severe psycho-psysiological reaction is virtually wholly work-related, that her condition continues to deteriorate in the present work setting, and that only if this matter can be concluded and she improves with both medical and psychological treatment will she be able to avoid total and permanent disability."[1]

Later plaintiff was examined by Dr. Goldfield, whose diagnostic impression was "Psychophysiologic gastrointestinal disorder—irritable bowel syndrome." He found that her illness was "exacerbated by the stresses which she experienced while working as a nurses' assistant at Sacramento Medical Center." Dr. Goldfield also stated in his report: "She has presently entered into psychotherapy with Betty Kalis, Ph.D., and some of her symptomatology has been alleviated through this

---

[1]Plaintiff's visits with Dr. Kalis were initially prompted by her attorney. However, at least one late consultation was made on the advice of plaintiff's Kaiser physician, who also urged plaintiff to continue to see Dr. Kalis.

means. I would strongly recommend that she continue with this psychotherapy and that she be re-evaluated in approximately four to six months."

A hearing was held on May 3, 1976, and Dr. Kalis appeared as a witness. According to the summary of the evidence, Dr. Kalis testified that "[b]oth Dr. Goldfield and the doctor at Kaiser recommended that the applicant continue getting therapy through the witness [Kalis]."

On May 18, 1976, the workers' compensation judge issued his findings and award that the plaintiff had sustained injury arising out of and occurring in the course of her employment. Temporary disability benefits, costs of self-procured medical treatment at Kaiser, medical-legal costs of Dr. Goldfield, and future medical treatment were granted as costs payable by the carrier. Self-procured treatment and reports by Dr. Kalis ($580) were not allowed as costs payable by the insurance carrier but were allowed as a lien against compensation awarded to the plaintiff.[2]

The Board denied a petition for reconsideration based upon its "review of the record, and for the reasons stated in said report [of the workers' compensation judge] which we hereby adopt and incorporate." From that order this petition for writ of review ensued.

Plaintiff contends that the cost for the services of a clinical psychologist (psychotherapist) should be awarded to an injured employee if a licensed physician recommends either the initiation or the continuance of psychotherapy.

Plaintiff states that substantial medical opinion was in agreement that she should undergo psychotherapy. Thus, such treatment should be considered as reasonably required for the cure and relief of the industrial injury, and hence the employee is entitled to be furnished with these

[2]In his opinion on decision, the judge states: "Nowhere in these sections [Lab. Code, §§ 3209.3, 3209.5, and 3209.7] is there even the slightest indication that clinical psychologists may submit reports reimbursible [sic] under Labor Code Section 4600, nor that they may treat with psychotherapy, except upon a written agreement between the employee and the employer. Efforts have been made to amend one or more of these sections to include clinical psychologists. These efforts have been unsuccessful, to date. It cannot reasonably be said, therefore, that clinical psychologists are included by inference. I do not find this omission justifiable, but I am bound to apply the law as it exists, not as it possibly should be. I, therefore, will not charge either the cost of Dr. Kallis' [sic] report nor the cost of her treatment to the carrier, but will instead make these charges a lien against compensation."

services by the employer. This follows, according to plaintiff, even though the Labor Code does not mention the services of a clinical psychologist. (In general, see 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) §§ 16.01 [2][b] and [c] and 16.05.)

Even assuming that no medical-professional recommended psychotherapy until after plaintiff had undertaken treatment, nevertheless such treatment is reimbursable by the employer and its insurance carrier. For this proposition plaintiff relies upon *Azevedo* v. *Abel* (1968) 264 Cal.App.2d 451, 460-461 [70 Cal.Rptr. 710], where we held, inter alia, that the Board correctly awarded claimant a sum for self-procured physiotherapy where the employer failed to provide treatment and where the treating physician acquiesced in the physiotherapy program and directed its continuance. Plaintiff argues that the key to the *Azevedo* decision is the "reasonableness" of the treatment. Moreover, since the employer-carrier denied that the injury was industrially caused, plaintiff argues she was justified in seeking any treatment which would benefit her, and that such treatment costs should be awarded. (See *McCoy* v. *Industrial Acc. Com.* (1966) 64 Cal.2d 82, 86-89 [48 Cal.Rptr. 858, 410 P.2d 362]; cf. *Elkins* v. *W.C.A.B.* (1973) 38 Cal.Comp. Cases 365; *Southern California Edison Company* v. *W.C.A.B.* (1971) 36 Cal.Comp. Cases 579.)[3]

Section 4600 of the Labor Code provides, in pertinent part, as follows: "Medical, surgical, chiropractic, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including artificial members, which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment." These expenses are further defined and limited by the following sections of the Labor Code:

Section 3209.3 provides:

"Physician includes physicians and surgeons, optometrists, dentists, podiatrists, and osteopathic and chiropractic practitioners licensed by

---

[3]Decisions of administrative tribunals do not constitute binding precedents. (6 Witkin, Cal. Procedure (2d ed.) Appeal, § 659, pp. 4574-4575.) They may be cited, however, for their persuasive value. (See *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 779-782 [100 Cal.Rptr. 377, 494 P.2d 1]; *Johnson* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964, 970 [88 Cal.Rptr. 202, 471 P.2d 1002].)

California state law and within the scope of their practice as defined by California state law."

Section 3209.5 provides:

"Medical, surgical, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, includes but is not limited to services and supplies by physical therapists and osteopathic and chiropractic practitioners as licensed by California state law and within the scope of their practice as defined by law."

Section 3209.7 provides, in relevant part:

"Treatment of injuries at the expense of the employer may also include, either in addition to or in place of medical, surgical, and hospital services, as specified in Section 3209.5, any other form of therapy, treatment, or healing practice agreed upon voluntarily in writing, between the employee and his employer."

As can readily be seen, none of these provisions specifically includes clinical psychotherapy as medical services chargeable to the employer of an injured worker. Thus, respondents claim that plaintiff is here attempting to circumvent clear, express statutory language, and hence her argument is best directed to the Legislature. ▇ ▇▇▇ (See Adams, *Judicial Restraint, The Best Medicine*, 60 Jud. 179.)[4]

We are here confronted with a situation akin to the one we faced in *Azevedo*. In that case we made the following relevant remarks (264 Cal.App.2d at pp. 460-461):

---

[4]The respondent State Compensation Insurance Fund notes that bills have been introduced in the Legislature for the 1973-1974 and 1975-1976 sessions which would have included licensed psychologists within the meaning of the workers' compensation laws. Since these bills failed to pass, the carrier argues the Legislature intended to exclude clinical psychologists. (Cf. *Shafer* v. *Registered Pharmacists Union* (1940) 16 Cal.2d 379, 383 [106 P.2d 403]; in general, see 2A Sutherland, Statutory Construction (4th ed.) § 48.02, pp. 184-190.) In some legislative contexts, the rejection by the Legislature of a specific provision militates against a judgment that the Legislature intended a result it expressly declined to enact. (See *Gulf Oil Corp.* v. *Copp Paving Co.* (1974) 419 U.S. 186, 200 [42 L.Ed.2d 378, 389, 95 S.Ct. 392]; *Madrid* v. *Justice Court* (1975) 52 Cal.App.3d 819, 825 [125 Cal.Rptr. 348].) However, we recently examined this subject of "unpassed bills" and concluded that "[a]s evidences of legislative intent they have little value." (*Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 58 [69 Cal.Rptr. 480]; see 1 Sutherland, *supra*, p. 163; but see *Cooper* v. *Swoap* (1974) 11 Cal.3d 856, 863-864; 881 [115 Cal.Rptr. 1, 524 P.2d 97] [dis. opn.].)

"Pacific Indemnity questions the propriety of a sum awarded for self-procured physiotherapy. An award for self-procured medical treatment was proper because the employer had failed to provide treatment. (Lab. Code, § 4600.) The physiotherapy item is the subject of complaint because an unspecified part of the cost was incurred a few days before Mrs. Azevedo consulted a licensed physician. The monetary significance of the objection is not revealed, but it is inferably close to *de minimis.* The physician acquiesced in the physiotherapy program and directed its continuance. Under these circumstances Mrs. Azevedo is not in the position of a claimant who incurred a significant bill for auxiliary services without medical direction. The doctor's ratification related back to the portion of the physiotherapist's fee incurred within the preceding few days, and his direction for its continuance demonstrates its reasonableness. (See 2 Hanna, *op. cit., supra,* § 16.01[2].)"

Respondents argue, however, that plaintiff does not cite decisional authority which makes allowable medical treatment not expressly authorized by the Labor Code. It should be noted in this context that, at the time we decided *Azevedo* (1968), physiotherapy was not expressly included in the Labor Code provisions. That came about by an amendment to the statute in 1971. (Lab. Code, § 3209.5; Stats. 1971, ch. 1490, § 4, p. 2943; 2 Hanna, *supra,* § 16.01[2][c].)[5]

█ Under the particular facts of this case, we hold that *Azevedo* is controlling and that the Board erred in denying the petition for reconsideration on the basis that the cost of services of a clinical psychologist could not be charged to plaintiff's employer and insurance carrier.

At the outset we note it is uncontroverted that plaintiff underwent psychotherapy as a part of her medical treatment. There is nothing in the record to indicate that this program of psychotherapy was anything but good, standard medical practice. Although plaintiff originally saw the clinical psychologist at the behest of her attorney, the attending physicians acquiesced in the psychotherapy program and directed its continuance. Under such circumstances, a distinction need not be made between that portion of the psychotherapy rendered by Dr. Kalis prior to Dr. Goldfield's recognition of its benefit and his direction thereafter to continue the treatment. (*Azevedo* v. *Abel, supra,* 264 Cal.App.2d at pp. 460-461.) In this connection, we note it is undisputed that the

---

[5]Surprisingly, neither party mentions this fact.

program of psychotherapy was apparently beneficial and contributed to the well being of the plaintiff-patient. We conclude that the services of the clinical psychologist were, in effect, performed under the direction of a physician and as such the services are within the purview of the provisions of the Labor Code. The employer is liable for the costs of such treatment. (*Azevedo* v. *Abel, supra,* 264 Cal.App.2d at pp. 460-461; 2 Hanna, *supra,* § 16.01 [1] and [2] [a], [b], [c]; cf. 2 Larson, Workmen's Compensation Law, § 61.13, p. 10-468.)[6]

The decision of the Board is annulled and the case remanded to the Board for proceedings consistent with the views expressed herein.

Evans, J., and Reynoso, J., concurred.

---

[6]Although a clinical psychologist is not a doctor of medicine when he practices psychodiagnosis and psychotherapy (as here), his activities closely coincide with those of the psychiatrist, who is medically trained. (See 6 Cal.Law Revision Com. Rep. (1964) p. 417.) It now appears beyond dispute that persons suffering from so-called "psychosomatic disorders" often require help from the specialist in psychotherapy. (See, e.g., 1 Louisell & Williams, Medical Malpractice, § 2.16, pp. 50-52.)