[Civ. No. 56304. Second Dist., Div. Three. Apr. 30, 1980.]

WALTER C. GLASS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
CITY OF GLENDALE, Respondents.

**COUNSEL**

Greene & Diamond and John A. Bloom for Petitioner.

Grancell, Kegel & Tobin and Robert R. Wills for Respondents.

## Opinion

**ALLPORT, J.**—Petitioner Walter C. Glass contends that respondent Workers' Compensation Appeals Board (Board) erred in omitting certain factors of permanent disability in the rating of his disability. We find merit in Glass' contention. Accordingly we annul the Board's decision and remand the matter to the Board for further proceedings.

### Summary of Proceedings Before Appeals Board

While employed from October 3, 1966, to September 9, 1976, as a fireman by respondent City of Glendale (City), Glass sustained injury arising out of and occurring in the course of said employment to his head and nervous system.

The workers' compensation judge (WCJ) found that the injury resulted in the following factors of permanent disability, which the WCJ referred to the disability evaluation bureau (hereinafter rating bureau) for a recommended rating:

"Injury to Head and Nervous System

"Please rate for objective factors contained in the report of David J. LaFia, M.D., dated January 27, 1978.

"Subjective: Constant sensation of clumsiness and numbness in right hand. Headaches, intermittent slight to moderate lasting about two hours once or twice a month. Limitation to light work."

In this regard Dr. LaFia's report states in pertinent part:

"Disability Rating:

"1. Permanent and stationary.

"2. Disability factors: Subjective complaints of constant sensation of clumsiness and numbness in the right hand with inability to recognize solid objects such as a key or the like with his right hand. Intermittent slight to moderate headache lasting about 2 hours once or twice a month requiring medication. History of focal epileptic seizure of the right upper extremity for which the patient takes Dilantin on a prophylactic basis.

"Objective factors: Diminished sensation in the right hand as well as a loss of perfect ability to recognize solid objects.

"WORK CAPACITIES:

"If this patient had to compete on the open labor market, it would be unwise for him to attempt any job that demanded climbing up ladders or working at heights, around heavy construction or operating heavy construction machinery. Also, he would not be fit for skilled movements with his right hand, such as a watchmaker, machinist, toolmaker, etc.

"There is also an element of anxiety which the loss of ability of his right hand for fine movements. He stated to me that he has become embarrassed on many occasions when he would have to look at an object with his right hand. Also, there is the anxiety which makes him take Dilantin 3 times a day in order to prevent a seizure. In other words, there is always the threat of seizure to him.

"Therefore, the most comprehensive rating would be that which limits him to light work."

Based upon the WCJ's stated factors of permanent disability the rating bureau disability evaluation specialist (hereinafter rater) recommended a permanent disability rating of 57-1/2 percent (which is equivalent to 293.5 weeks of disability payments at $70 per week for a total of $20,545).

The WCJ issued an award of 57-1/2 percent permanent disability based on the rater's recommendation.

City then sought reconsideration by the Board on the question of permanent disability. Granting reconsideration, the Board stated: "Although Dr. LaFia does suggest a limitation to light work is warranted, the Board is not persuaded that such a description sets forth the factors of disability. Apparently, Dr. LaFia used the light work limitation as a means of characterizing the factors of disability rather than as a factor of disability. The Board is of the opinion that the rating instructions utilized by the workers' compensation judge do not accurately and completely describe the nature and extent of applicant's disability. We are persuaded that new rating instructions should be formulated based upon the factors of disability set forth by Dr. LaFia and

then submitted to a disability evaluation specialist for his or her consideration. *Franklin* v. *WCAB* (1971), 18 Cal.App.3d 682, 36 CCC 429; *Luchini* v. *WCAB* (1970), 7 Cal.App.3d 141, 35 CCC 205. We believe that such new rating instructions are essential to complete the record on the issue of the nature and extent of permanent disability so as to enable us to make a just and reasonable decision on the issue raised herein...."

The Board then directed the following factors of permanent disability, which left out Dr. LaFia's light work restriction, to the rating bureau for evaluation: "Injury to head and nervous system.

"Please rate for objective factors contained in the medical report of David J. LaFia, M.D., dated January 27, 1978.

"Applicant precluded from climbing up ladders, working at heights and from employment requiring skilled movements with right hand.

"Subjective complaints include complaints of constant sensation of clumsiness and numbness in right hand. Intermittent slight to moderate headache lasting about two hours once or twice a month."

Based upon these factors of permanent disability, the rater recommended a 48-3/4 percent permanent disability rating (which amounts to 233.75 weeks of disability payments at the rate of $70 per week in the total sum of $16,327.50).

Thereafter, the Board issued an amended permanent disability award of 48-3/4 percent. The Board "believe[d] that the 48-3/4% permanent disability rating is a fair and accurate characterization of applicant's [Glass'] overall disability." The Board stated that: "The permanent disability rating was based upon the medical report of David J. LaFia, M.D., and hence, justified by the evidence." However, the Board also stated: "The Board was not persuaded that the limitation to light work set forth by Dr. LaFia accurately described applicant's factors of disability. The light work limitation *appeared* to be used to characterize the factors of disability rather than constituting a factor of disability." (Italics added.)

### Contention

Glass contends that the Board erred in not including a limitation to "light work" as suggested by Dr. LaFia in the factors of permanent dis-

ability. Glass also asserts the Board erred in failing to include Dr. LaFia's recommendation that he be precluded from working around heavy construction or operating heavy construction machinery, that Glass must take medication to avoid a seizure, and that Glass has an element of anxiety which results in the loss of ability to use the right hand for fine movements.

*Discussion*

I

The initial question is whether it is permissible to rate Glass' permanent disability on the basis of a limitation to "light work."

Labor Code section 4660, subdivision (b) vests with the administrative director of the Division of Industrial Accidents (of the Department of Industrial Relations) the authority to promulgate "a schedule for the determination of the percentage of permanent disabilities." (See *Mihesuah* v. *Workers' Comp. Appeals Bd.* (1976) 55 Cal.App.3d 720, 726-727 [127 Cal.Rptr. 688]; *Department of Motor Vehicles* v. *Workmen's Comp. Appeals Bd. (Payne)* (1971) 20 Cal.App.3d 1039, 1043 [98 Cal.Rptr. 172].) The administrative director has so adopted the "Schedule for Rating Permanent Disabilities Under Provisions of the Labor Code of the State of California" (hereinafter Rating Schedule). The Rating Schedule is "prima facie evidence of the percentage of permanent disability to be attributed to each injury covered by the [Rating Schedule]." (Lab. Code, § 4660, subd. (b); see *Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd.* (1967) 252 Cal.App.2d 327, 331-332 [60 Cal.Rptr. 442].)

Within the Rating Schedule is the Guidelines for Work Capacity (hereinafter Guidelines) which sets forth the rating of various work restrictions. It is within the Guidelines that a limitation to "light work" is defined.[1] The Guidelines state that they apply in toto only for "pulmo-

---

[1]Under the Guidelines the following are the major work restriction classifications:

"GUIDELINES FOR WORK CAPACITY
"These apply to pulmonary, heart disease, abdominal weakness and spinal disabilities.
"*Guidelines g) and h) may apply to lower extremity disabilities.*
"a) *Disability Precluding Very Heavy Lifting*
contemplates the individual has lost approximately one-quarter of his pre-injury capacity for lifting.

nary, heart disease, abdominal weakness and spinal disabilities" and that only the two highest work restrictions (semisedentary and sedentary) apply to lower extremity disabilities. The Board, however, in *Becker* v. *Security Pacific National Bank* (Board en banc opinion, 1976) 41 Cal. Comp.Cases 274 (writ den., hg. den.) has extended the *entire* Guidelines and corresponding standard ratings to lower extremity injuries.

(A statement 'inability to lift 50 pounds' is not meaningful. The total lifting effort, including weight, distance, endurance, frequency, body position and similar factors should be considered with reference to the particular individual.)

[A ten (10) standard rating.]
    "b)   *Disability Precluding Very Heavy Work*
contemplates the individual has lost approximately one-quarter of his pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling and climbing or other activities involving comparable physical effort.

[A fifteen (15) standard rating.]
   "c)   *Disability Precluding Heavy Lifting*
contemplates the individual has lost approximately half of his pre-injury capacity for lifting. (See statement regarding lifting under a) above.)

[A twenty (20) standard rating.]
   "d)   *Disability Precluding Heavy Lifting, Repeated Bending and Stooping*
contemplates the individual has lost approximately half of his pre-injury capacity for lifting, bending and stooping.

[A twenty-five (25) standard rating.]
   "e)   *Disability Precluding Heavy Work*
Contemplates the individual has lost approximately half of his pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling, and climbing or other activities involving comparable physical effort.

[A thirty (30) standard rating.]
   "f)   *Disability Resulting in Limitation to Light Work*
contemplates the individual can do work in a standing or walking position, with a minimum of demand for physical effort.

[A fifty (50) standard rating.]
   "g)   *Disability Resulting in Limitation to semi-Sedentary work*
contemplates the individual can do work approximately one half the time in a sitting position, and approximately one half the time in a standing or walking position, with a minimum of demands for physical effort whether standing, walking or sitting.

[A sixty (60) standard rating.]
   "h)   *Disability Resulting in Limitation to Sedentary Work*
contemplates the individual can do work predominantly in a sitting position at a bench, desk or table with a minimum of demands for physical effort and with some degree of walking and standing being permitted.

[A seventy (70) standard rating.]"
   (See *Johns-Manville Products Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 87

Legal commentators are not in agreement whether the Guidelines and the corresponding standard ratings can be properly applied to parts of the body other than pulmonary, heart disease, abdominal weakness, spinal disabilities (as expressly permitted by the Guidelines) and lower extremities (under *Becker*). (See Cal. Workmen's Compensation Practice, *op.cit. supra*, § 15.17; St. Clair, *op.cit. supra*, § 8.6, pp. 144-145; Mastoris, Summary of 1978 California Workers' Compensation Law (1979) pp. 64-66.)

The authority relied upon by the Board in *Becker* is *Luchini v. Workmen's Comp. App. Bd.* (1970) 7 Cal.App.3d 141 [86 Cal.Rptr. 453], where the court faced the application of the Guidelines to a right leg injury. In evaluating the injured's permanent disability, the Board relied upon the opinion of a physician from the Medical Bureau of the Division of Industrial Accidents. The physician opined that the injured "should be limited to light work and should not walk on uneven terrain or do any climbing" and that with the "type of injury and bone graft which occurred to applicant [he] should do no lifting and particularly no heavy lifting and certainly not over 25 pounds and certainly not where he will have to twist as he would run into the same hazards as would be experienced if he walked on uneven terrain." The Board refused to incorporate in the rating instructions the physician's recommended prophylactic work restrictions. The court held the Board erred in not including such work restrictions in the rating instructions: "It has long been recognized that in rating back disabilities there are four major elements to be considered: limitation of motion; pain; weakness; and limited endurance; and the basis for rating is usually restriction on activity produced by a combination of these four elements plus additional factors such as the use of appliances, etc. These plateaus or guidelines for rating are well known and a limitation to light manual labor is 40 percent while a limitation to light work is 50 percent before

---

Cal.App.3d 740, 750-751, fn. 6 [151 Cal.Rptr. 215]; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1979) § 11.02[3]; 1 Herlick, Cal. Worker's Compensation Law Handbook (2d ed. 1978) § 7.32, pp. 237-241; Cal. Workmen's Compensation Practice (Cont. Ed. Bar 1973) § 15.17, pp. 540-543; St. Clair, Cal. Workers' Compensation Law and Practice (1980) § 8.5, pp. 138-141.)

"Standard rating" refers to the rating before adjustment for age and occupation. (See Lab. Code, § 4660, subd. (a); 1 Hanna, *op.cit. supra*, § 11.03; 1 Herlick, *op.cit. supra*, §§ 7.34-7.37; Cal. Workmen's Compensation Practice, *op.cit. supra*, §§ 15.18-15.25; Welch, Fundamentals for Applying Cal. Schedule for Rating Permanent Disabilities (1975) pp. 3-6.)

adjustment for age, occupation, etc., sedentary work 70 percent. (See 1 Hanna, § 11.02[3].) These guidelines are also used for rating neck disabilities, heart disease, impaired pulmonary functions, and weakness of abdominal muscles. No reason appears why these guidelines are not properly applied in other cases when uncontradicted medical opinion compels a similar restriction on activity although the restriction is produced by injury to a leg or other specific part of the body.

"In any event, the board cannot rely on some administrative procedure to deny to petitioner a disability award commensurate with the disability that he has suffered. Whether compliance with the law as laid down in *LeVesque*, and in this opinion, requires amended instructions to the rating specialist, or a revision of the rating procedures, or whether it can be accomplished under section 4660, subdivision (a) of the Labor Code, are procedural matters for the board to determine on remand; its duty is to take whatever steps are necessary to insure that the award of permanent disability granted petitioner takes fully into consideration the work restrictions imposed by the treating physicians." (*Luchini, supra*, 7 Cal.App.3d at p. 146.)

In *Abril v. Workers' Comp. Appeals Bd.* (1976) 55 Cal.App.3d 480 [127 Cal.Rptr. 483], the court was presented with the application of the Guidelines to an eye injury. There the injured's factors of permanent disability included loss of vision, watering of the eye and also a physician-recommended restriction from "vigorous activity, heavy lifting and activity involving jarring and sudden motion" in order "[t]o avoid the risk of further retinal detachment." Under the Rating Schedule loss of vision is the usual basis for the rating of an eye injury. The rater recommended at total 37 percent rating based upon a 25 percent standard for loss of visual acuity, which adjusted to 32 percent for age and occupation, plus a 2 percent increment for watering of the eye, and only 3 percent for the work restriction. The rater refused to apply the Guidelines' standard ratings for the work restriction on the asserted grounds of "judgmental ceiling" on eye disability. While the court in *Abril* rejected the outright application of the Guidelines' standard ratings, it also rejected the rater's (and the Board's) ceiling on ratings for eye injuries. In this regard the court stated at pages 485-486: "As is not unusual, we find the appropriate result to lie approximately equidistant between the positions of these contending parties. Contrary to the contention of the applicant, simple addition of the 25 percent value from category (d) of the guidelines would not be appropriate for several reasons. By their terms those guidelines are limited to 'pulmonary, heart

disease, abdominal weakness, spinal and lower extremity disabilities.' (For a discussion of the guidelines, see *Luchini* v. *Workmen's Comp. App. Bd.*, 7 Cal.App.3d 141 [86 Cal.Rptr. 453].) But moreover, when applied, the descriptive categories from the guidelines become a unitary approach to rating the entire disability, which may include loss or impairment of a body member, as well as work restrictions or limitations, actual or prophylactic. In other words, the categories are a measure of overall disability and are a very direct implementation of Labor Code section 4660, which defines 'disability' as 'the diminished ability…to compete in an open labor market.' To use the categories directly in an eye case, in view of the specific values assigned by the standard rating tables to various impairments of the eyes, would result in use of opposing approaches to the rating of a unitary disability.

"On the other hand, we cannot accede to the appeals board's position that every injury to an eye is limited in its disabling effect to the 25 percent value assigned to the loss of vision in the standard rating tables . . . . [A]s explained and illustrated in *Nielsen* v. *Workmen's Comp. Appeals Bd.*, 36 Cal.App.3d 756, 758 [111 Cal.Rptr. 796], a rating that ignores the intangible or nonbodily element 'is not rationally related to Applicant's diminished ability to compete on the open labor market as is required by Labor Code section 4660, subdivision (a). It is, therefore, arbitrary, unreasonable and not supported by the evidence in light of the entire record.'"

██ Accordingly, when work restrictions are applicable as to any part of the body, not expressly covered by the Guidelines or under *Becker*, the work restriction is to be taken into consideration in the rating of the permanent disability. This is not to say, however, that the Guidelines' standard rating is to be applied. Rather, when work restrictions are involved concerning bodily parts not specifically stated in the Guidelines or covered under *Becker*, the rater must evaluate the standard rating appropriate for the work restriction by analogy or comparison and achieve a judgment rating.

Such "judgment" or "non-scheduled" ratings are an accepted part of the permanent disability rating process as it is recognized that not all disabilities can be expressly covered in the Rating Schedule. (*Department of Motor Vehicles, supra*, 20 Cal.App.3d at pp. 1043-1045; *Fidelity & Cas. Co., supra*, 252 Cal.App.2d 327; *Young* v. *Industrial Acc. Com.* (1940) 38 Cal.App.2d 250-255 [100 P.2d 1062]; 1 Hanna, *op.*

*cit. supra*, § 11.01[6]; Cal. Workmen's Compensation Practice, *op.cit. supra*, § 15.22; 1 Herlick, *op.cit. supra*, § 7.32.) Indeed the Rating Schedule itself directs the evaluation of nonscheduled disabilities: "General Rules Applying to Cases in Which Disability and/or Occupation Are not Covered Specifically by the Schedule: (Note 1) [¶] Evaluate non-scheduled disabilities (A) by comparison with the nearest scheduled disability, (B) by analogy to a scheduled disability, or (C) by comparison with the entire scheme of relative severity of disabilities. [¶] Apply the following rule to any non-scheduled disability which is related to a starred (*) scheduled disability. (1) Determine a standard rating for the non-scheduled disability, adjusted to the nearest whole percent. (2) Modify such standard rating for occupation and age in accordance with rules.... Note (1)—Since it is impossible to include all disabilities in a schedule, the list of disabilities is designed to provide guides for the rating of disabilities which commonly occur. *Omission of a disability from this schedule does not necessarily signify that it is not ratable.* When an occupation occurs which is not listed in the schedule by the identical title and industrial designation, it may be that such occupation is listed under an alternate title. If it is not so listed, it will be necessary to determine the basic functions and activities of such occupation and relate it to a scheduled occupation which is comparable, to determine the appropriate group number." (Rating Schedule, p. 1.) (Italics added.)

The Board may not rely upon alleged limitations in the Rating Schedule to deny the injured worker a permanent disability award which accurately reflects his true disability. (*Abril, supra,* 55 Cal.App.3d at pp. 485-486; *Nielsen v. Workmen's Comp. Appeals Bd.* (1974) 36 Cal.App.3d 756 [111 Cal.Rptr. 796]; *Luchini, supra,* 7 Cal.App.3d at p. 146; see also, *Universal City Studios, Inc. v. Workers' Compensation Appeals Board* (1979) 99 Cal.App.3d 647, 661-664 [160 Cal.Rptr. 597].) While the Rating Schedule is prima facie evidence of the proper disability rating, it may be controverted and overcome. (*Universal City Studios, supra,* 99 Cal.App.3d at pp. 662-663.)

In rebuttal to the Rating Schedule, Glass has presented the medical opinion of Dr. LaFia that a "light work" limitation is an accurate overall description of his permanent disability. City, for its part, presented no evidence that a light work restriction is either inappropriate for this type of disability or that the findings of Dr. LaFia do not support such a restriction.

In sum, a limitation to "light work" even for this type of injury may be a ratable factor of permanent disability.

## II

■ In its rating instructions to the rating bureau, the Board must set forth a full description of every factor of the injured's permanent disability. (*Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 172 [93 Cal.Rptr. 15, 480 P.2d 967].) Further, "It is well settled that the board, if it relies at all on the report and testimony of a medical examiner must give full weight to *all* of the findings of that doctor, and may not omit a factor of disability described by him. (*Luchini* v. *Workmen's Comp. App. Bd.* (1970) 7 Cal.App.3d 141, 145 [86 Cal.Rptr. 453]; *Mann* v. *Workmen's Comp. App. Bd.* (1968) 265 Cal. App.2d 333, 339 [71 Cal.Rptr. 237]; *Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd.* (1967) 252 Cal.App.2d 327 [60 Cal.Rptr. 442].) An award which ignores such factors lacks substantial evidence to support it. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432].)" (*Franklin* v. *Workmen's Comp. Appeals Bd.* (1971) 18 Cal.App.3d 682, 684 [96 Cal.Rptr. 201].)

It is recognized that the above rule in *Franklin* has limitations. Neither the WCJ nor the Board may rely upon a physician's factor of disability which is known to be erroneous, based upon facts no longer germane, based upon an inadequate medical history or examination, based upon an incorrect legal theory, or based upon speculation, conjecture or guess. (See *Hegglin, supra*, 4 Cal.3d at p. 169.)

■ Here, the Board disregarded the light work restriction indicated by Dr. LaFia as it believed he "apparently" was using "the light work limitation as a means of characterizing the factors of disability rather than as a factor of disability." The Board asserts it is unconvinced that the individual factors of disability set forth by Dr. LaFia justify a "light work" restriction.

The error in the Board's position is that it has assumed (i.e., Dr. LaFia, in the Board's words, "*appeared* to . . . characterize") rather than clarifying the situation with Dr. LaFia. Rather than speculating about Dr. LaFia's meaning the Board should have clarified the matter by asking him either by letter or by direct testimony at a hearing. "The referee or appeals board may not leave undeveloped matters which its acquired specialized knowledge should identify as requiring further evi-

dence." (*Raymond Plastering* v. *Workmen's Comp. App. Bd.* (1967) 252 Cal.App.2d 748, 753 [60 Cal.Rptr. 860]; see also *W. M. Lyles Co.* v. *Workmen's Comp. App. Bd.* (1969) 3 Cal.App.3d 132, 138 [82 Cal.Rptr. 891]; *West* v. *Industrial Acc. Com.* (1947) 79 Cal.App.2d 711, 719 [180 P.2d 972].)

In addition to the light work restriction, the Board without any explanation has also omitted from the rating instructions other factors of permanent disability stated by Dr. LaFia. This too was error.[2]

### Disposition

The Board's opinion and decision after reconsideration is annulled and the matter is remanded to the Board for such further proceedings as are consistent with our opinion herein.

Cobey, Acting P. J., and Potter, J., concurred.

---

[2]This is not to say we approve the manner in which the WCJ described the factors of disability. The WCJ's rating instructions fail to make clear that the light work limitation is not a totally separate factor of disability but rather is a "comprehensive factor" (i.e., the combined effect of the other factors of disability is an overall light work restriction).