[No. A040342. First Dist., Div. Four. Sept. 7, 1988.]

DANNY O. DUKE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, NUODEX
CHEMICAL COMPANY et al., Respondents.

COUNSEL

Airola, Williams & Dietrich and Barry J. Williams for Petitioner.

Ronald J. Zappelli, Mullen & Filippi and William B. Donohoe for Respondents.

OPINION

**ANDERSON, P. J.**—Petitioner Danny O. Duke (hereafter applicant) seeks review of that portion of an order of the Workers' Compensation Appeals Board (hereafter Board) which rescinded an award of 15 and ½ percent permanent partial disability and further medical treatment made by the workers' compensation judge (hereafter WCJ). We conclude that the Board, in denying permanent partial disability and further medical treatment for an industrially incurred sensitivity which precludes exposure to solvents, failed to consider applicant's diminished ability to compete in the open labor market as required by Labor Code section 4660, subdivision (a).[1] The Board's decision, therefore, is arbitrary, unreasonable, and not supported by substantial evidence in light of the entire record. (§ 5952; *Nielsen* v. *Workmen's Comp. Appeals Bd.* (1974) 36 Cal.App.3d 756, 758 [111 Cal.Rptr. 796].)

Section 4660 provides: "(a) In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury, *consideration being given to the diminished ability of such injured employee to compete in an open labor market.*

"(b) The administrative director may prepare, adopt, and from time to time amend, a schedule for the determination of the percentage of permanent disabilities in accordance with this section. Such schedule shall be available for public inspection, and without formal introduction in evidence shall be prima facie evidence of the percentage of permanent disability to be attributed to each injury covered by the schedule.

"(c) Any such schedule and any amendment thereto or revision thereof shall apply prospectively and shall apply to and govern only those permanent disabilities which result from compensable injuries received or occur-

---

[1] All further statutory references are to the Labor Code.

ring on and after the effective date of the adoption of such schedule, amendment or revision, as the fact may be." (Italics added.)

Applicant testified that he began working at Nuodex Chemical Company, insured by Insurance Company of North America (respondents), in October of 1979 in the packaging department in the main warehouse, packaging colorant for paint. During the first year he was transferred temporarily to manufacturing and maintenance. In maintenance, his duties were to clean the mills and pumps, using solvents. In 1980, he was moved into the manufacturing department. In the manufacturing process, he ran and cleaned the mills and pumps that would grind the paint and pump colorant into packaging. He mixed chemicals by dumping resins and solvents into 300-gallon open tanks and mixing them with a dry colorant. Then he would mill the colorant into other tanks to get the right viscosity. He wore a respirator, but not constantly, for it cut off oxygen, caused him to hyperventilate and get hot and sweaty, and it did not completely protect him from inhaling fumes.

In the middle of 1983, applicant experienced his first migraine headache. He described it as a "euphoric drunk feeling, and then my right or left eye would start flashing out and blacking out like somebody had taken a picture of me and I couldn't see, and that was accompanied by the migraine headaches." The headaches occurred every two weeks for about a year, when the frequency increased to once a week. In 1984, he was assigned to making experimental batches in a separate area with little ventilation. By 1985, the frequency of the headaches had increased to every day or every other day. By July 1985, he was so sick he could not continue working. The company doctor, Dr. Peer, agreed that he needed to get away from that work. Two weeks after leaving work, his symptoms cleared.

The WCJ found applicant's testimony to be credible, and in finding industrial injury, the WCJ chose to rely upon the opinion of Dr. Robert Harrison, finding his opinion more persuasive than that of Dr. Lonnie Bristow. Dr. Harrison reported that applicant's headaches were directly related to some chemical in his working environment, and that it was the "impression and clinical experience of numerous physicians in occupational medicine that exposure to industrial chemicals, particularly solvents, can precipitate episodes of migraine headaches." The WCJ's finding of compensable injury was supported by solid, credible evidence; the Board properly accorded his finding the great weight to which it was entitled. (*Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 281 [113 Cal.Rptr. 162, 520 P.2d 978]; *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 319 [90 Cal.Rptr. 355, 475 P.2d 451].) The Board, however, rescinded the WCJ's award of 15 ½ percent permanent partial disability and further

medical treatment, reasoning as follows: "We believe that the injury that occurred in this case, headaches resulting from exposure to chemicals, is analogous to cases where an employee sustains dermatitis because of his or her exposure to chemicals or other harsh materials at the worksite. As a general rule, each outbreak of dermatitis is treated as a separate injury and the employer is responsible for the treatment of that outbreak. (*Cerelli* v. *State Compensation Ins. Fund* (1930) 17 Ind. Acc. Com. 18.) Permanent disability, however, is not found unless the employment, and not a mere personal idiosyncrasy, caused the sensitivity. (*Richie* v. *Ind. Acc. Com.* (1957) 22 Cal. Comp. Cases 80.) Here, there is no evidence that applicant's employment with defendant caused applicant's sensitivity to the chemicals he was exposed to at the worksite or caused any permanent injury to applicant. We will therefore find that applicant suffered no permanent disability. [¶] Finally [we] are not persuaded that applicant, who had been symptom-free since his last exposure to the work environment, is in need of further medical care."

Applicant contends that in denying permanent partial disability and further medical treatment, the Board has erred by reaching back into ancient history to dredge up the thoroughly repudiated so-called constitutional defect in a worker which makes him susceptible to becoming injured where a normal individual would not suffer injury. Applicant contends that cases subsequent to 1961 have followed the concept that there is ratable permanent disability in acquired sensitivity cases where the acquired sensitivity causes a handicap in competing in an open labor market. In support of his contention, applicant relies on *Nielsen* v. *Workmen's Comp. Appeals Bd.*, *supra*, 36 Cal.App.3d 756. Respondents' brief is silent as to *Nielsen*.

In *Nielsen* a bank vault teller developed an industrial injury in the nature of an acute sensitivity to the metals nickel and copper. The judge awarded 13 percent permanent disability, the customary, though unscheduled, rating for skin sensitivity cases. The rating was premised on the assumption that the employee would be able within one year to rehabilitate herself and find employment which did not expose her to the substance to which she was sensitive. The court annulled the award and remanded to the Board for further proceedings, as follows: "While the customary rating may be reasonable with respect to many sensitivity cases, it is not rationally related to Applicant's disability in this case. As previously noted, Applicant here is totally disabled from engaging in any employment in which she comes into contact with nickel or copper, and there are few, if any, occupations on the open labor market which do not involve contact with these metals. There is no evidence that Applicant will be able to rehabilitate herself within one year and find employment on the open labor market which does not involve contact with nickel or copper. [¶] Thus the 13 percent permanent disability

rating is not rationally related to Applicant's diminished ability to compete on the open labor market as is required by Labor Code section 4660, subdivision (a). It is, therefore, arbitrary, unreasonable and not supported by the evidence in light of the entire record. (Lab. Code, § 5952.)" (*Nielsen* v. *Workmen's Comp. Appeals Bd., supra,* at p. 758, fn. omitted.)

Moreover, although the court noted that it was not its proper province to make ratings, it suggested that the employee's disability should be "at least as great as a person with a back or heart injury limiting him to sedentary work." (*Nielsen* v. *Workmen's Comp. Appeals Bd., supra,* at p. 758, fn. 1.)[2]

■ Although decisions of administrative tribunals are persuasive, such decisions do not constitute binding precedents. (*Miles* v. *Workers' Comp. Appeals Bd.* (1977) 67 Cal.App.3d 243, 247, fn. 3 [136 Cal.Rptr. 508].) We question the Board's action in relying on outmoded writ-denied cases rather than current authority which recognizes that consideration must be given to a worker's "diminished ability . . . to compete in an open labor market." (§ 4660, subd. (a); *General Foundry Service* v. *Workers' Comp. Appeals Bd.* (1986) 42 Cal.3d 331, 339 [228 Cal.Rptr. 243 [193 Cal.Rptr. 547, 666 P.2d 989], 721 P.2d 124]; *LeBoeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 243; *Nielsen* v. *Workmen's Comp. Appeals Bd., supra,* 36 Cal.App.3d 756, 758; *Glass* v. *Workers' Comp. Appeals Bd., supra,* 105 Cal.App.3d 297, 306.)

In *Bstandig* v. *Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 988, 996 [137 Cal.Rptr. 713], the court cited *Nielsen* in noting that "[t]he attitude toward allergies has changed." And in this modern day we know much more about the effect on the human body of exposure to chemicals. (*Kyles* v. *Workers' Comp. Appeals Bd.* (1987) 195 Cal.App.3d 614, 620 [240 Cal.Rptr. 886] [exposure to polychlorinated biphenyls].)

■ In light of the entire record, moreover, the Board's conclusion that "mere personal idiosyncrasy," rather than the employment, caused the sensitivity does not withstand scrutiny. There was no showing that applicant had any sensitivity to chemicals prior to the time he began working for Nuodex in 1979, and it was not until 1983 that the headaches caused by cumulative exposure to chemicals began to occur. And it was not until 1985, when the headaches were occurring every day and the employer could provide no place where applicant was not exposed to fumes, that applicant was forced to leave work. The company doctor, Dr. Peer, attributed the headaches to chemical exposure and recommended that applicant change

---

[2]A disability resulting in limitation to sedentary work produces a 70 percent standard rating. (*Glass* v. *Workers' Comp. Appeals Bd.* (1980) 105 Cal.App.3d 297, 303 [164 Cal.Rptr. 312]; Cal. Workers' Compensation Practice (Cont.Ed.Bar 3d ed. 1985) § 16.24, p. 693.)

his job to avoid exposure. The fact that applicant became symptom-free two weeks after leaving his employment further supports the WCJ's finding that chemical exposure was the cause of his sensitivity. That the sensitivity remains to this date and will recur if he is again exposed to chemicals is established by applicant's credible testimony that he experienced a recurrence of his symptoms in December of 1985 when he was staining and shellacking a table in his garage at home.

■ Although Dr. Harrison stated that applicant, at the time of his examination, had no permanent impairment, Dr. Harrison also stated that applicant must avoid exposure to solvents because the headaches would return upon further exposure. The necessity to avoid such exposure is a ratable permanent disability.[3] Dr. Harrison also stated that applicant should be entitled to medical treatment for his headaches should they return, even in the absence of exposure to chemicals or solvents.

That portion of the Board's order denying permanent partial disability and further medical care is annulled, and the matter is remanded to the Board. Applicant shall recover his costs.

Poché, J., and Channell, J., concurred.

---

[3] The relevant consideration is how much of the labor market is closed to the worker because of his preclusion from exposure to chemicals. This is the measure of the worker's diminished capacity to compete in the open labor market. (Cal. Workers' Compensation Practice, *supra,* § 16.31, p. 702.) It is recognized that not all disabilities can be expressly covered in the rating schedule, but "judgment" or "non-scheduled" ratings are an accepted part of the permanent disability rating process. (*Glass* v. *Workers' Comp. Apppeals Bd., supra,* 105 Cal.App.3d 297, 306.)